

FILED

NOV 08 2013

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 11 CR 79 |
| vs. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| NICHOLAS LACY | ) | |

## PLEA AGREEMENT

1.   This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY FARDON, and defendant NICHOLAS LACY, and his attorney, NATHAN DIAMOND-FALK, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.   The indictment in this case charges defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing heroin, in violation of Title 21, United States Code, Section 846  (Count One); use of a telephone in facilitating the commission of a narcotics trafficking offense, in violation of Title 21, United States Code, Section 843(b) (Counts Two through Five); and forfeiture allegations.

3.   Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiring to possess with intent to distribute and distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing heroin, in violation of Title 21, United States Code, Section 846. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than in or about May 2010, and continuing until on or about February 8, 2011, at Robbins, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant NICHOLAS LACY, aka "Pork,"conspired with Lawrence Scott, aka "Lay Lay," Derrick Thigpen, aka "Thig," Marcus Gillespie, aka "K.O.," Desmond Scott, aka "Jake," Chuanise Loving, aka "Foo Foo," and others known and unknown, to knowingly and intentionally possess with intent to distribute and to distribute a controlled substance, namely, one kilogram or more of

2

a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846.

More specifically, beginning no later than February 2009 and continuing until May 2010, LACY worked with a family member (Individual A) who operated a heroin distribution organization which obtained wholesale quantities of heroin, mixed and packaged the heroin into user quantities, and then distributed the user quantities for sale in the area of 138th and Kedvale in Robbins, Illinois (the "drug spot"). At times, LACY accompanied Individual A when Individual A purchased wholesale quantities of heroin from Jose Sandoval, whom LACY knew as "Frankie." LACY knew Individual A would mix, package, and sell the heroin purchased from Sandoval at the drug spot. LACY mixed and bagged heroin for Individual A at an apartment rented by Chuanise Loving for sale at the drug spot.

Beginning no later than May 2010, and continuing until on or about February 8, 2011, LACY took over the operation of the drug spot and established his own heroin distribution organization (the "Lacy Organization") which controlled the drug spot. LACY bought wholesale quantities of heroin in amounts ranging from 150 grams to as much as 300 grams from Sandoval at a time, approximately every week or every two weeks. Lacy sold approximately 25-50 grams of heroin every week or two weeks to Eric Ridgner and packaged the remaining heroin for sale at the drug spot. LACY knew that Ridgner was mixing and packaging the heroin LACY sold him for distribution to individual customers.

3

LACY and Lawrence Scott mixed and packaged the heroin daily for sale at the drug spot. The Lacy Organization sold the heroin to customers at the drug spot in small zip loc bags for $10 a piece at the drug spot. A group of 13 bags of heroin (referred to by the Lacy Organization as a "whole one") sold for $100. Chaunise Loving permitted LACY to use her apartment in Riverdale, Illinois, to mix and package the heroin; in return, LACY assisted Loving with her rent. Once the heroin was packaged into user quantities, LACY and L. Scott distributed the heroin to members of the Lacy Organization, using Loving and others to transport the heroin from Loving's apartment to the drug spot.

LACY directed L. Scott to conduct daily supervision of members of the Lacy Organization who worked at the drug spot selling user quantities of heroin, including Derrick Thigpen, Marcus Gillespie, Desmond Scott, and others ("the spot workers"). LACY received telephone calls from his heroin customers requesting heroin. LACY then directed the heroin customers to the drug spot and used a separate telephone to call one of the spot workers with the quantity and price of the heroin to be sold the customer. When the customer arrived at the drug spot, a spot worker delivered the heroin to the customer and collected the money. The spot workers also took turns working as security for the Lacy Organization, watching for law enforcement activity and rival drug dealers in the area of the drug spot.

L. Scott and the spot workers kept LACY informed by telephone as to the volume of sales at the drug spot, police activity near the drug spot, and any problems that arose. Based upon this information, LACY directed L.Scott and the

4

spot workers as to where, when, and how to sell the heroin to customers. LACY also directed L. Scott and the spot workers as to how to deal with police, certain customers, and spot workers who were not performing up to Lacy's standards.

At LACY's direction, L. Scott paid the spot workers in amounts LACY determined. The drug spot was open every day and typically sold between approximately $1,000-$3,245 worth of heroin each day between May 2010 and February 2011.

The Lacy Organization used violence to protect its customers and the drug proceeds. On November 9, 2010, one of the spot workers called LACY and informed him that "Quinn just took that money from the cluck," meaning that Quinn had stolen money from a heroin customer. LACY instructed the spot worker to "tell Thig (Thigpen) he better whip Quinn and get that motherfucking money back, man," meaning that Thigpen should beat up Quinn and recover the stolen proceeds. LACY called L. Scott and told him, "Tell them (meaning the spot workers) that I'm not sending another motherfucker through there till they whoop Quinn and get that money back man. We are officially closed till they whoop that nigga and get that money back man," meaning that the spot workers had to beat up Quinn and retrieve the stolen proceeds before Lacy resumed sending customers to the spot. LACY then called Thigpen, and asked, "You all whip Quinn yet?" Thigpen responded, "Naw, the boys (police) down there. I'm not going to let his ass go nowhere, 'cause I know exactly who he about to run to." LACY told Thigpen, "The very second its clear, fuck him up and get that money back man. I want that

5

money back." Several hours later, one of the spot workers called LACY, and stated, "I just went down there and hollered. I fucked him up and shit, but he ain't cough up no bread," meaning that he beat up Quinn, but did not recover the stolen drug proceeds.

At some point in January or February 2011, LACY decided to close down the drug spot due to the amount of police activity at the drug spot. LACY gave the telephone his customers used to contact him to obtain heroin to L.Scott. LACY knew that L.Scott and other spot workers intended to continue distributing heroin at a new location. LACY obtained wholesale quantities of heroin from Sandoval to enable L.Scott and others to distribute heroin at the new location.

LACY admits that the total amount of heroin distributed by LACY and by LACY's co-conspirators that was reasonably foreseeable to LACY was at least between 3 kilograms and 10 kilograms.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 20 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $20,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least 10 years, and up to any number of years, including life.

b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty   imposed.

<u>Sentencing Guidelines Calculations</u>

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of the offense. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual in effect at the time of the offense, namely the November 2010 Guidelines Manual.

7

b.    **Offense Level Calculations.**

    i.    The base offense level is 34, pursuant to Guideline § 2D1.1(a)(5) and (c)(4), because the amount of heroin involved in the offense and relevant conduct for which defendant is responsible was at least three kilograms but less than ten kilograms;

    ii.    The offense level is increased by 2 levels, pursuant to Guideline § 2D1.1(b)(2), because defendant used violence, made a credible threat to use violence, or directed the use of violence;

    iii.    The offense level is increased by 2 levels pursuant to Guideline §2D1.1(b)(12), because defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance;

    iv.    The offense level is increased by 4 levels, pursuant to Guideline §3B1.1(b), because defendant was an organizer or leader and the criminal activity involved five or more participants; and

    v.    The offense level is increased by 2 levels, pursuant to § 2D1.1(14)(E), because defendant received an adjustment under § 3B1.1 and defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.

    vi.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 3 and defendant's criminal history category is II:

i.    On or about April 22, 1997, defendant was convicted of possession of controlled substances in the Circuit Court of Cook County, Illinois, and sentenced to 2 years' probation.    Pursuant to Guideline § 4A1.2(e)(2), defendant receives zero criminal history points for this conviction.

ii.    On or about August 28, 2006, defendant was convicted of possession of controlled substances in the Circuit Court of Cook County, Illinois,

and sentenced to 2 years' special probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

      iii. On or about April 4, 2007, defendant was convicted of manufacture/delivery of 400<900 grams of cocaine in the Circuit Court of Cook County, Illinois and sentenced to 18 months' conditional discharge. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

      iv. On or about February 19, 2008, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, and sentenced to 6 months' supervision. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

      d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 41, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory Sentencing Guidelines range of 360 months' imprisonment to life imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 20 years' imprisonment.

      e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead

the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

       f.      Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

    11.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial

preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court to: (1) pursuant to Guideline § 5K1.1, to depart from the low end of the applicable Guideline range and to impose a sentence of 66% of the low end of the applicable Guideline range, and (2) dismiss the information filed pursuant to 21 U.S.C. § 851. The government shall not make a motion pursuant to 18 U.S.C. § 3553(e). Defendant shall be free to recommend any sentence, subject to the applicable statutory minimum. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.     If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range and to dismiss the information filed pursuant to 21 U.S.C. § 851, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the then-applicable twenty year statutory minimum sentence

without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1 or 18 U.S.C. § 3553(e).

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. On or about March 7, 2011, the FBI commenced administrative forfeiture proceedings against $4,337 that was seized on or about February 8, 2011 (the "seized funds"). Defendant acknowledges that he had notice of the administrative forfeiture proceedings, did not file a claim, and understands that declarations of forfeiture have been entered, extinguishing any claims he may have had in the seized funds. Furthermore, defendant affirmatively relinquishes all right, title, and interest he may have had in the seized funds. Defendant understands that forfeiture of these funds shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Forfeiture

17. The indictment alleges that defendant and his coconspirators are liable to the United States for at least approximately $366,000, including but not limited

to approximately $4,337 seized on February 8, 2011, which funds are subject to forfeiture because they constitute proceeds of the narcotics trafficking activity alleged in the indictment. By entry of a guilty plea to Count 1 of the indictment, defendant acknowledges that the funds identified above are subject to forfeiture.

18.    Defendant agrees to the entry of a forfeiture judgment in the amount of $366,000 in that those funds are subject to forfeiture as alleged in the indictment. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right, title, and interest he has in the above-described funds so that they may be disposed of according to law.

19.    Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 79.

21.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States

14

Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt

15

beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to

16

determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective

assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      c.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

24.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this

information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _Nov. 8, 2013_

_____
ZACHARY FARDON
United States Attorney

_____
NICHOLAS LACY
Defendant

_____
JENNIE LEVIN
Assistant U.S. Attorney

_____
NATHAN DIAMOND-FALK
Attorney for Defendant

21